Next case is Cascades Streaming Technology v. Big Ten Network, 2018-14-24. Mr. Greenspool, good morning. Thank you, Judge Lurie and the panel. Good morning, Your Honors, and may it please the Court. B.T.N. puts all of its legal eggs in the District Court's basket. So B.T.N. comes to this Court, they don't have, they don't offer any reason to affirm unless this Court exactly adopts the prosecution disclaimer ruling as found by the District Court. Gupta. Gupta. Over Gupta, that's right. Gupta, right. Do the parties agree that it's proper in terms of claim construction to refer to streams, audio, video streams, video streams and files interchangeably? The District Court stated that premise, but I just want to... I don't have a particular record citation to show where we disagreed with that proposition, but I think Your Honor is observing that the prosecution comments use the term streams and the claim construction with its disclaimer baggage use the word files. Well, what I'm... I think for present purposes... What I'm observing is that they seem to have been used interchangeably. I would agree. I would concede that. Okay. I'm not going to stand here and say that's wrong, but... Is there a genuine dispute of material fact with respect to any other claim limitations or is it just the different video files limitation that's in it? That's the limitation of the ruling on appeal here. I believe there were some other claim limitations that were brought up in the summary judgment motion, but they weren't reached by the District Court. Okay. So the District Court... The point of our appeal, Your Honor, is that the District Court misjudged the point of distinction in the words used to distinguish Gupta. And here's how. The parties both agree, they both agree that Gupta discloses switching between its different streams, that the streams are different even in Gupta. And you see that on page 17 and page 30 of the red brief. And you see that from the words itself in Gupta. And I can go to page 809 of the record, paragraph 96 of the reference. This is a quote directly from there. Quote, the video streams have different timelines and also vary by quality. If you're looking on the geography of that page, it's the top left... In the second column. The video streams have different timelines and also vary by quality. So everybody agrees that Gupta had different streams. So it just can't be that when the inventor stated in passing that their own invention has completely different streams, that that was to make a distinction over Gupta. That was a point of similarity, not a point of distinction. And what ended up in the district court's ruling was some idea that the statements at page 3462 were pointing to some similarity in the way Gupta's switch streams render in the same way. So the district court used the terminology cosmetic differences as naming whatever the supposed point of distinction was. Well, you argued, you argued, when arguing not anticipated, Gupta's, I'm quoting, Gupta's system stores multiple speed versions of the audio and video content for playback at different speeds, which is completely different than Cascade's video switching from one stream to a completely different stream without any alterations to the video or audio. That's... In fact, your honor, I was going to right now read those exact words. Okay. This, meaning Gupta's system, is completely different than Applicant's invention, where the video is switched from one stream to a completely different stream without any alterations to the video or audio. So what's being stated there is the point of distinction is switching without any alterations to the video or audio. The exact words... When the PTO allowed the claims, it said the allowance was based upon its agreement that, quote, Cascade's, I'm putting an ellipsis in there, but Cascade's claims all features switch from first video, a switch from first video data to second video data as disclosed by Cascade's. The first video data and the second video data are data from differing points of view. Correct? That is stated in the examiner's comment. Okay. Right. Well... I mean, why then doesn't the prosecution history support the district court's claim construction because Cascade's disclaimed its now argued for construction when it attempted to avoid a rejection based on Gupta? On that point, Your Honor, the district court actually rejected arguments that the claims are limited to switching among different points of view. There were... That was actually the focus of the claim construction briefing, the Markman briefing and proceedings below. The defendants, BTN, advocated for a limitation in the claim construction so that the different files had to be different points of view. But there's claim differentiation that's contrary to that position, and there are a number of other reasons contrary to that position. So in fact, I don't even believe, Your Honor, that the excerpt that you just cited, Your Honor, from the prosecution history, the examiner's statements, I don't even believe that was mentioned in the red brief. I think that ship has sailed in terms of the parties trying to limit the scope of the claim to only switching among different points of view because that argument just didn't fly even in the district court. No, no, no. That's not what I'm saying. Isn't that an unambiguous disavowal of a claim scope that encompassed video files that are not completely different from each other? If I understood what you said correctly, Your Honor, you were naming the examiner's statement after these events. I'm asking you, doesn't that? Sure. Why? I'll tell you exactly. Because the words of the applicant, which is what we really focus on when ascertaining prosecution disclaimer, state, completely different than applicant's invention where the video is switched from one stream to a completely different stream without any alterations to the video or audio. Again, emphasis, switched without alterations. Yes, in passing, completely different stream is a phrase in this statement, but that's not a point of distinction and it could not have been a point of distinction because Gupta had different streams. Everybody agrees that Gupta had different streams. So it was therefore wrong for the district court to find a clear and unmistakable, unambiguous disavowal because there was no distinction of, and let me turn now to the infringement issue, there was no distinction in these comments over a system that used image resolution differences among the different files. That's what the BTN system is. It's called adaptive bit rate streaming and that involves, say, switching from a 240p image resolution to a 1080p image resolution. So BTN switch, there's no dispute, it happens without an alteration. The inventions switch, it happens in the preferred embodiment and in the claims without an alteration. And where it comes to the point of distinction allegedly found by the district court, BTN's files are different, Gupta's files are different, the invention's files are different. That just wasn't the point of distinction and especially so in the way the district court found that it was a point of distinction. The district court found that the emphasis was supposedly on cosmetic differences and visual experience differences, but you just can't glean that from the words I read from the record nor from the rest of the larger paragraph. So your honors, there's briefing on several other grounds for reversal and of course I can take questions on any of those, but it's enough, your honors, that the district court misjudged the point of distinction in these prosecution remarks from 3462 and we therefore respectfully request that the court reverse or vacate summary judgment. You're not going to discuss the discovery matter at all? As much as, of course I'm happy to. So we brought that up, the amount in dispute is in context not very much, but we brought that up in part as a service to the court and as a service to the bar because it's very rare that this court or any court of appeals gets to pass on the proper legal interpretation of the discovery rules. And the issue here is that the discovery rules as they stand do not state any mechanism for shifting of fees to reimburse for the briefing on a motion requesting a second deposition. With all the cases that were brought forward by BTN, none of them actually hold that briefing cost reimbursement is available when you get a Rule 30 order allowing the second deposition of an individual. And I can go into detail on any of those decisions to show they're distinguishable, but the main point of our argument is you read Rule 37, it doesn't apply to this scenario. You read Rule 30, it doesn't allow briefing cost shifting in this scenario. Unless there are further questions, I'll reserve the rest of my time. Thank you. Thank you, counsel. We will hold our time for you. Mr. Pavane. Good morning, Your Honor. Mr. Greenspoon, my opponent, says that the prosecution history language that was cited by the district court does not in fact result in the disclaimer that the court found. But he glosses over the words of the disclaimer and says that in passing the inventor in distinguishing over GUPTA mentioned that the streams were completely different in the Cascades invention. If you read the sentence, it's only two sentences, you read them in context, it's very clear. The first part says that GUPTA is directed to a system that stores multiple speed versions of the audio video content. So what does that mean? It's got the same audio video content, but in two different speed versions, fast, slow. Then it goes on to say this, and this can only refer to what was just said in that one sentence because that's the beginning of the whole argument. And this goes on to say this is completely different than Ablicant's invention, where the video is switched from one stream to a completely different stream. Now, he would gloss over those words, but in context, that can only mean that we're talking about a stream that has different video content. Because the first one is the same audio video content, just at different speeds, and the second one is saying we have streams that are completely different without alteration to the audio and video. So they're completely different, different content, and we're not changing them. We're not making them fast or slow or anything else. We're just using completely different streams. So he's making two points there. And I think your key word is completely. Yes, completely different. Yes. I think modifying different. I agree with that. And based on that, the judge correctly found that this is a disclaimer of streams that are not completely different, and that if you simply have streams, as the judge put it in his claim construction, that are mere alterations of each other, then those are not within the scope of the invention, because that scope has been specifically disclaimed. And I think that's all there is to this case. There's not much more to it. It's very straightforward. The judge did a detailed analysis of the prosecution history. The particular office action response that's at issue here is not very long. All of the arguments that they make as to why the judge was wrong simply don't fly. For example, they say that, well, really what this was all about, and I think you probably saw this in their briefs, was all about smooth switching. The invention's all about smooth switching. Well, first of all, there's no mention in several of the claims that were under rejection at the time, and all the claims were under rejection, there's no mention anywhere in many of those claims about the concept of smooth switching. You'd have to somehow read it in there. Nor is it mentioned in this passage that we're talking about. The judge very carefully took the paragraph- Absolutely. Let's be clear. It is mentioned in the passage, but I think what you're on, because it's on 3462 in the exact same paragraph, but I think you're missing what, for me, was the argument that persuaded me they weren't right about smooth switching, which on page 3462, in the same paragraph, right after the sentences we're discussing, it says, moreover, Hukda doesn't teach a smooth switching stream technology, not in page 82, nor page 96. The concept of smooth switching is completely absent in Hukda. So it's in the same passage- I was going to say that you- Don't interrupt me. I'm sorry. You're wrong factually. However, I think the part that helps you is the fact that it says, moreover, to me, that implies they're saying, and now I have another argument for why Hukda's different, that is different from the one I just made. I don't understand. A hundred percent. And what I was trying to say was, when I referred to the passage I was about to speak, I was referring to the entire paragraph, and I was going to make the point you exactly just made, that there are other points exactly in there where they do reference smooth switching, but certainly not in those first couple of sentences. I agree with you exactly on that point. So, they also make the point- well, on this, it's really not even relevant anymore. Now we've talked about that already in terms of the whole discussion. But the judge- It doesn't mean you have ten minutes. It doesn't mean you have to use- Yeah, no, I know. I just- I understand that. But I just wanted to make the point that the judge took that long passage, which he broke into four separate categories, and he pointed out how each one, as Judge Moore pointed out, was a different argument as to distinguishing over Gupta. And with that, I will say, if you have any questions about the sanctions, we're happy to rest on our brief on that. I think the statute- the cases are clear that you can indeed grant sanctions. It wasn't just for a second deposition. It was because of a belated production of documents, as was stated in the facts, that required a second deposition. And the single case they cite from the Seventh Circuit on that point was, in fact, didn't deal with the question of whether sanctions could be granted against the party. In that particular case, the only thing that was reversed was- and challenged in the first place- was whether they could grant the sanctions against the lawyer. The sanctions against the party were not even challenged, and they were upheld. Well, having been a trial judge for 16 years, I always felt I had, in addition to inherent powers, 37, gave an awful lot of leeway. Yes, under ANC, I agree. Thank you. Thank you, Your Honor. We will save your time for rebuttal, if you need it. Mr. Greenspun. Thank you, Your Honor. What we heard from Mr. Pavane in the very beginning of his remarks is he recharacterized that first sentence from the passage as saying, quote, it, meaning Gupta, has got the same audiovisual content. But that's not what the passage says. The passage actually points out that there are different streams in Gupta, just the same as the invention. And again, I come back to my main argument. It's not a point of distinction they were making to say even the word completely different streams, because they are completely different streams in Gupta. Paragraph 96 of Gupta says that. Also, when quoting that passage from the file history, what we just heard is that my brother ended the sentence he was quoting at completely different streams, full stop, period. But this passage actually goes on without alterations to the video or audio. And finally, Judge Moore, in response to your observation about the word moreover, we addressed this in our reply brief at page six. And we showed that moreover, an accepted use of that terminology is for introducing an additional and important fact that supports or emphasizes what you have just said. Well, see, I read this very clearly as adding another reason to support or emphasize that but not a reason that is the same as the prior reason. I don't see smooth switching, which is in the moreover sentence, as being what's being talked about in the first few sentences. I understand, Your Honor, and that is how the district court viewed it as well. The only final request I would make of the panel is to see how the paragraph actually ends. And if you review, what's interesting to me is the district court did not, I believe it did not quote the final sentence of the paragraph. And the final sentence to me is, if there's a tiebreaker to resolve this ambiguity, it's the final sentence. And... Where in the record? This is the same page. It's 3462, I believe. I'm just going to read it and step down, but, of course... Are you referring to therefore, because it doesn't suggest... It's the word therefore begins. Therefore, the reference doesn't teach or suggest the claim limitations. So the word therefore is the summation of all the sentences that have come before. And it's the wrap-up, which to me, it resolves that all these really are talking about the same thing. Otherwise, what would alterations in the video or audio mean? We've never heard any position from either the district court or from BTN what switching without alterations could possibly mean other than some emphasis by the inventors in these remarks on the way we have smooth switching. Which means, the thrust of the comments, GUPTA doesn't have smooth switching. So unless there are any further questions, Your Honor... Oh, I apologize. One more point. There was no order on documents in the discovery dispute in the district court. It's because the documents were produced before there was any need for a motion, any need for a court order. The only question before the district judge on this... At what point during the process? It was subsequent to the first deposition. So the first... How much subsequent and how much prior? I believe about two weeks, within two weeks, maybe one week. The... 30 days sticks in my mind, but I... Your Honor could be right. I didn't prepare for that question, but it was very, very soon after the deposition when they first made the request for the emails, particularly, the emails were produced. So it was never before the district court that it had to decide whether there should be an order to compel documents. So that means that the actual request of the district court and the actual order granting the request of the district court was about a Rule 30 second deposition. And that's where our argument lies. Thank you, Counsel. We'll take the case on review. Thank you, Your Honor. Thank you. Thank you.